## 20384

Richard TILLOTSON, Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

(233 S. E. (2d) 295)

*Messrs. Wyche, Burgess, Freeman & Parham,* of Greenville, *for Appellant,*

*Messrs. Horton, Drawdy, Marchbanks, Ashmore, Chapman & Brown,* of Greenville, *for Respondent,*

March 15, 1977.

LITTLEJOHN, Justice.

This action was brought by respondent Richard Tillotson (Tillotson) against the appellant State Farm Mutual Automobile Insurance Company (State Farm), his motor vehicle liability insurance carrier, to collect medical, hospital and disability benefits provided by his policy pursuant to the Automobile Reparation Reform Act of 1974 (the Act). This coverage is often referred to as Personal Injury Protection (PIP); it provides reimbursement for medical expenses and lost wages incurred within a three year period following an automobile accident.

The Act requires that every automobile liability policy afford PIP coverage in the amount of one thousand dollars. It also requires that an automobile liability carrier offer the insured additional PIP coverage up to $5,000.

By consent of the parties the case was tried by the judge without a jury, on a stipulation of facts and documents. The judge ruled in favor of Tillotson. State Farm appeals.

Tilltson, while a pedestrian, was struck and seriously injured by an automobile driven by Willie Butler on March 10, 1975. He incurred PIP losses in the amount of $4,-492.06.

At the time of the collision, Butler's automobile liability insurance policy provided $1,000 in PIP benefits to Tillotson, and this amount was paid. Tillotson's liability policy with State Farm also provided supplemental PIP coverage, protecting him (Tillotson) to the extent of $5,000.

Having already received $1,000 from Butler's insurance carrier, Tillotson filed a claim with State Farm for $3,492.06 under the supplemental PIP coverage of his own policy. State Farm offered to pay Tillotson's claim in the amount of $3,492.06, but only provided that he execute a "Loan Receipt Under Personal Injury Protection Coverage." The nature of the loan receipt was to require Tillotson to reimburse State Farm if he should recover these PIP coverage elements of damages from Butler or Butler's insurance carrier by way of a law suit or a voluntary settlement.

Tillotson refused to execute the "Loan Receipt" and brought this action to collect the $3,492.06.

Prior to the trial of the case, Tillotson was paid $14,000 pursuant to the liability portion of Butler's policy. The limits of Butler's policy was $15,000, which Tillotson received in full less a $1,000 reduction representing the PIP benefits which Tillotson also received. This reduction was required by § 46-750.113(b), Code of Laws of South Carolina (1962) *as amended* (Supp. 1975), quoted hereinafter.

Tillotson's policy included two provisions, each in the nature of a subrogation agreement designed to retrieve for State Farm PIP coverage paid in the event Tillotson succeeded in collecting compensation for PIP losses from the

tort feasor (Butler). The first provision is entitled "Subrogation" and would require Tillotson to execute and deliver instruments of subrogation. The second provision is entitled "Reimbursement and Trust Agreement" and would require Tillotson to sign a "Loan Receipt" in the nature of a note to be repaid only in the event recovery for PIP losses is made by Tillotson against the tort feasor (Butler). It is under the "Reimbursement and Trust Agreement" section of the policy that State Farm has attempted to claim its rights.

The sole question before this Court is whether State Farm's reimbursement agreement involving PIP coverage benefits is permitted by the Act. We are called upon to construe the statutory provisions.

The relevant portions of the Act to the question for determination are as follows:

"§ 46-750.111. . . . Except as otherwise provided in this article, no policy or contract . . . of liability insurance . . . shall be issued, delivered, sold or renewed in this State after October 1, 1974, unless such policy also affords the minimum medical, hospital and disability benefits set forth herein. . . . The minimum medical, hospital and disability benefits shall include up to an amount of one thousand dollars per person for payment of all reasonable expenses arising from the accident . . . No benefit payable pursuant to this section shall be subject to subrogation or assignment except as provided for in § 46-750.113(b). . . .

"§ 46-750.112. . . . No application for an automobile insurance policy, . . . shall be taken with respect to any automobile registered or principally garaged in this State unless benefits of the same kind and supplemental to those described in § 46-750.111 shall be offered to the named insured with alternative benefit levels, at the option of such insured, of $1,500, $2,000, $2,500 or $5,000. . . . "§ 46-750.113 . . .

(b) If a claimant recovering from his insurer the benefits for economic loss required by § 46-750.111 shall bring action

or make claim against another person who has furnished security pursuant to this chapter, such claimant may plead and prove in his action or claim against the other person the economic loss for which he has been reimbursed but after verdict in his favor the court shall reduce such verdict by the amount of the benefits paid for economic loss by the claimant's insurer and any voluntary settlement effected by or between the claimant and such person or his insurer shall similarly be reduced in respect to expenses for economic loss previously recovered by the claimant from his insurer."

The statute specifically says that the required $1,000 shall not be subject (with one exception) to subrogation or assignment. The question we are called upon to determine is whether the subrogation or assignment limitation applies to the additional $4,000 PIP coverage which Tillotson opted to purchase and pay an additional premium. It is the contention of State Farm that the additional $4,000 coverage involved here was optional and that the parties are free to contract relative to it.

It is the contention of Tillotson that the "no subrogation or assignment" requirement of § 46-750.111 applies not only to the $1,000 PIP coverage required, but applies also to the supplemental $4,000 coverage which he opted to purchase over and above the $1,000 PIP coverage required by § 46-750.111.

In support of its contention that a subrogation and/or reimbursement agreement was permissible, State Farm points out that the legislature failed to expressly prohibit subrogation or assignment with respect to PIP benefits in excess of the basic $1,000 coverage. It places heavy emphasis on the language of § 46-750.111, arguing that "same kind" should be interpreted as meaning that the same subrogation and/or reimbursement rights should apply. It further submits that Tillotson should be prohibited from collecting twice for the same medical expense and lost wages under supplemental coverage.

We disagree.

Section 46-750.112 requires the insurer to offer to the insured "benefits of the same kind and supplemental to those described in § 46-750.111." The question then arises: What kind of benefits are provided by that section? The answer is, as stated in the section itself, ". . . medical, hospital and disability benefits." In our opinion the "same kind" language regarding supplemental benefits refer only to the type of benefits involved; the words do not refer to other rights and responsibilities included in the section. The requirement is that any supplemental benefits must be applied to "payment of all reasonable expenses arising from the accident and sustained within three years from the date thereof . . ." See § 46-750.111 quoted *supra*.

The only subrogation or assignment permitted is that described in § 46-750.113(b), and this section specifically refers to ". . . a claimant recovering from his insurer the benefits for economic loss required by § 46-750.111 . . ." It does not refer to supplemental benefits permitted by § 46-750.112.

The purpose of the subrogation exception permitted in § 46-750.111, spelled out in § 46-750.113(b), is to prevent a tort feasor's insurance carrier from paying twice for the same PIP damages. Other subrogations are impermissible. Our ruling does no violence to this proposition. While it is true that in some instances a double recovery may be had, a double premium has been collected.

The effect of the subrogation and reimbursement clauses included by State Farm in its policy is to say: "We will pay this additional $4,000, but you must repay us if you collect the amount from the person who brought about the injury." The effect of the provision is to water down, or lessen, the coverage and protection which the legislature has required an automobile insurance carrier to offer to the injured person. The intent of the legislature is not spelled out. It therefore becomes the duty of this Court to determine the legis-

lative intent and to say whether the subrogation and re-imbursements are permissible. PIP coverage is required because it is desirable that medical services be procured and lost wages replaced regardless of who is at fault in bringing about the injuries. It is a "nofault" type of payment. It is common knowledge that medical bills arising from automobile collision injuries can exceed $1000 rapidly. No doubt this is one of the reasons for requiring insurance companies to make the supplemental PIP coverage available. We are of the opinion that it was the legislative intent that when the additional PIP coverage is procured, the same be paid without the possibility of reimbursement from a tort feasor. This is consistent with the overall purpose of the Act.

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.